**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-5014**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

RAYVON GREGORY BROWN, a/k/a Ray-Ray,

        Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg. Glen E. Conrad, District Judge. (5:06-cr-00029-gec)

Submitted: July 31, 2008      Decided: September 26, 2008

Before KING and DUNCAN, Circuit Judges, and WILKINS, Senior Circuit Judge.

Affirmed in part; vacated and remanded in part by unpublished per curiam opinion.

Edwin F. Brooks, EDWIN F. BROOKS, LLC, Richmond, Virginia, for Appellant. John L. Brownlee, United States Attorney, Jean B. Hudson, Assistant United States Attorney, Charlottesville, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Rayvon Gregory Brown appeals his 324-month sentence after pleading guilty to conspiracy to distribute and possess with intent to distribute more than fifty grams of cocaine base, in violation of 21 U.S.C.A. §§ 841(b)(1)(A), 846 (West 1999 & Supp. 2008), four counts of possession with intent to distribute cocaine base, in violation of 21 U.S.C.A. § 841(a)(1), (b)(1)(C), and two counts of possession with intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C.A. § 841(a)(1), (b)(1)(B). Brown claims the district court erred in calculating the amount of drugs attributable to him and by imposing sentencing enhancements for possession of a firearm and his role within the conspiracy. Brown also asserts his sentence is unreasonable in light of the Supreme Court's ruling in Kimbrough v. United States, 128 S. Ct. 558 (2007), and the recent amendments to the Sentencing Guidelines for crack cocaine offenses. After reviewing the record, we find the district court did not err in determining Brown's base offense level or by imposing the sentencing enhancements. However, because the district court did not have the benefit of the Kimbrough decision or the amendments to the crack cocaine Guidelines at the time of Brown's sentencing, we remand this case to allow the district court an opportunity to reconsider Brown's sentence.

I

Appellate review of a district court's imposition of a sentence is for abuse of discretion. Gall v. United States, 128 S. Ct. 586, 597 (2007); see also United States v. Pauley, 511 F.3d 468, 473 (4th Cir. 2007). This court "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.A.] § 3553(a) [(West 2000 & Supp. 2008)] factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range." Gall, 128 S. Ct. at 597.

If there are no procedural errors, we next consider the substantive reasonableness of the sentence. Id. "Substantive reasonableness review entails taking into account the totality of the circumstances, including the extent of any variance from the Guidelines range." Pauley, 511 F.3d at 473 (internal quotation marks and citation omitted). While this court may presume a sentence within the Guidelines range to be reasonable, we may not presume a sentence outside the range to be unreasonable. Id. "Even if we would have reached a different sentencing result on our own, this fact alone is 'insufficient to justify reversal of the district court.'" Id. at 474 (quoting Gall, 128 S. Ct. at 597).

Brown's first claim challenges the district court's determination of his base offense level. He asserts that the amount of drugs held attributable to him was based on hearsay statements provided by co-defendants "who hoped to curry favor with the Government" in order to reduce their own sentences. Pursuant to U.S. Sentencing Guidelines Manual ("USSG") § 1B1.3(a)(1) (2005), in determining the proper base offense level to apply to a defendant involved in a drug conspiracy, the defendant is responsible for his own acts, as well as for "all reasonably foreseeable acts" of his co-conspirators taken in furtherance of the joint criminal activity. See United States v. Randall, 171 F.3d 195, 210 (4th Cir. 1999); United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993). The Guidelines do not require precise calculations of drug quantity, as the district court's approximation is not clearly erroneous if supported by competent evidence. Randall, 171 F.3d at 210. If the district court relies on the drug quantity included in the pre-sentence report ("PSR"), the defendant bears the burden of establishing that the information is incorrect, as "mere objections are insufficient." Id. at 210-11.

According to the PSR, as well as the summary of evidence submitted by the Government in support of Brown's guilty plea, the

conspiracy was responsible for a minimum of 896 grams of crack cocaine and a maximum of 2,688 grams. The probation officer estimated that during Brown's involvement in the conspiracy, an estimated 2.126 kilograms of cocaine base were transported from Washington, D.C., to a residence in Luray, Virginia, where it was then repackaged and distributed. The probation officer reached this estimate based on proffers made by a number of Brown's co-defendants who had pled guilty. DEA Agent Kenneth Rosel testified that, according to the co-defendants' accounts, Brown originally transported one to two ounces of crack cocaine each week from Washington, D.C.; however, the amount eventually increased to three or four ounces a week. Probation Officer W.R. Good also testified that the accounts given by the co-defendants were "very consistent" with one another and with their prior statements to authorities.

While Brown contends the district court erred by relying on hearsay statements provided by his co-defendants, a sentencing court may consider any relevant information, including hearsay evidence, provided the information has "sufficient indicia of reliability to support its probable accuracy." USSG § 6A1.3(a); see also United States v. Love, 134 F.3d 595, 607 (4th Cir. 1998) (no bar on use of hearsay at sentencing). In this case, Agent Rosel and Probation Officer Good both testified that the drug amounts were calculated based on statements provided by a number of co-conspirators, all of whom had first-hand knowledge of the

narcotics operation and were found by the officers to be "very consistent" and "very credible." While Brown testified that the total amount of drugs brought in each week was far lower than the Government's estimate, the district court found the statements provided by his co-conspirators were sufficiently reliable to support the Government's estimate of the total drug amount. See United States v. Sampson, 140 F.3d 585, 591 (4th Cir. 1998) (in reviewing Guidelines sentence, appellate court assesses district court's credibility determinations for clear error). Accordingly, the district court did not err in finding that Brown was responsible for at least 1.5 kilograms of cocaine base.

B

Brown next contends the district court erred by imposing a four-level enhancement for his role within the conspiracy. A four-level enhancement for the defendant's role in the offense is appropriate when "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG § 3B1.1(a). Factors distinguishing a "leadership" or "organizational role" from that of a manager or supervisor include:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

- 6 -

USSG § 3B1.1, comment. (n.4).

According to the PSR, Brown was the "hub" of the conspiracy, as he developed a reliable source of cocaine base in Washington, D.C., and transported and distributed the cocaine throughout Page County, Virginia, with the assistance of his co-conspirators. Brown was described as having "almost complete authority and control" over the conspiracy, as he "fronted drugs to members of the conspiracy, maintained the source of supply, set prices, meeting dates and times, recruited others and profited substantially from the activities of the conspirators." At the sentencing hearing, Agent Rosel testified that the accounts provided by the co-defendants indicated that Brown was the source for the crack cocaine and the head of the conspiracy. Agent Rosel and Probation Officer Good also detailed an incident in which Brown held a gun to the head of one of the co-conspirators and threatened to kill him after Brown discovered that he was stealing crack cocaine and replacing it with "soap powder."

Again, Brown asserts the enhancement imposed by the district court was based solely on hearsay accounts provided by unreliable informants and co-conspirators. At the sentencing hearing, Brown testified that he did not direct or organize the conspiracy, and notes there was no evidence he received a greater share of the proceeds. However, in light of the statements provided by his co-defendants, the district court found Brown's

testimony to not be credible. See Sampson, 140 F.3d at 591. Based on the information contained in the PSR and the summary of evidence, as well as the testimony provided by Rosel and Good, the district court had reliable evidence that Brown maintained the source of narcotics, organized the transportation of the cocaine base from Washington, D.C., into Page County, recruited co-conspirators to repackage and distribute the drugs, directed others to procure firearms for use in the conspiracy, and exercised control and authority over his co-conspirators through threats of violence. Accordingly, the district court did not err in determining that Brown was a leader or organizer within the conspiracy.

C

Brown also contends the district court erred by imposing a two-level enhancement for possession of a firearm. Under USSG § 2D1.1(b)(1), a two-level offense level enhancement shall be imposed if a dangerous weapon, including a firearm, was possessed during the narcotics offense. The adjustment is applied "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1, comment. (n.3). In order to demonstrate that a weapon was present, the Government need show only that "the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction." United States v. McAllister,

272 F.3d 228, 233-34 (4th Cir. 2001) (internal quotation marks and citation omitted). Pursuant to USSG § 1B1.3(a)(1)(B), a defendant may be held responsible for a firearm possessed by another member of the conspiracy if possession of the firearm was reasonably foreseeable to the defendant and in furtherance of the jointly undertaken criminal activity. See United States v. Kimberlin, 18 F.3d 1156, 1159-60 (4th Cir. 1994).

According to the PSR, Brown and his co-defendants "regularly used and carried firearms in furtherance of the conspiracy." Brown's co-conspirators noted occasions when he would become "highly volatile" while in possession of a firearm and would use his gun to threaten them. Brown also recruited one of his co-conspirators to serve as an armed "enforcer" in order to provide security during transportation or distribution of the narcotics. Agent Rosel testified that almost all of the co-conspirators had seen Brown in possession of multiple firearms, including a .45 caliber handgun with a laser sight. Brown also used a firearm to threaten a co-conspirator after Brown caught him stealing crack cocaine.

On appeal, Brown relies on the fact that no firearms were ever recovered from him or any other member of the conspiracy. However, such evidence is not required in order to impose a sentencing enhancement for possession of a dangerous weapon; rather, the district court need only find the evidence presented

has "sufficient indicia of reliability to support its probable accuracy." USSG § 6A1.3(a). In this case, Brown's co-conspirators provided consistent statements to investigating officers regarding Brown's procurement, possession, and use of firearms during the course of the conspiracy, both for protection and enforcement. Despite Brown's testimony that he neither possessed a firearm nor saw any member of the conspiracy with a gun, the accounts provided by his co-conspirators were sufficiently reliable for the district court to determine that Brown's testimony was not credible. Accordingly, the district court did not err in imposing a two-level enhancement for possession of a firearm in furtherance of the conspiracy.

D

Finally, Brown contends his sentence is unreasonable in light of the Supreme Court's ruling in Kimbrough and the recent amendments to the Sentencing Guidelines for crack cocaine offenses.[1] The Government acknowledges the district court did not have the benefit of the Kimbrough decision at the time of Brown's sentencing and concedes the case should be remanded for resentencing.[2]

---

[1]Prior to sentencing, Brown filed a sentencing memorandum in which he requested the district court consider reducing his sentence to account for the disparities in sentencing between crack cocaine and powder cocaine offenses.

[2]After Brown was sentenced in October 2007, the Supreme Court decided that "it would not be an abuse of discretion for a district

- 10 -

Accordingly, while we affirm the district court's determination of the total drug amount for which Brown should be held responsible and the imposition of the relevant sentencing enhancements, we vacate the sentence imposed and remand this matter in order to allow the district court an opportunity to reconsider Brown's sentence in light of <u>Kimbrough</u> and the amendments to the Sentencing Guidelines. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED IN PART;</u>
<u>VACATED AND REMANDED IN PART</u>

---

court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." <u>Kimbrough</u>, 128 S. Ct. at 575. <u>Kimbrough</u> thus abrogated this Court's decision in <u>United States v. Eura</u>, 440 F.3d 625, 634 (4th Cir. 2006) (holding that 100:1 ratio cannot be the basis of a variance), <u>vacated</u>, 128 S. Ct. 853 (2008). Furthermore, on November 1, 2007, the United States Sentencing Commission lowered the base offense level for drug offenses involving crack cocaine. <u>See</u> USSG § 2D1.1 (2007); USSG App. C, Supp. Amend. 706. Upon remand, these amendments would be applicable.